Jason M. Leviton
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
jason@blockesq.com

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BLAGOVEST Y. DACHEV, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, and JENNIFER FALL JUNG,<br><br>    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Blagovest Y. Dachev ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.    This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Funko, Inc. ("Funko" or the "Company") common stock between August 8, 2019 and March 5, 2020, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      Funko is a pop culture consumer products company that creates figures, plush, accessories, apparel, and homewares regarding movies, TV shows, videogames, musicians, and sports teams.

3.      On February 5, 2020, after the markets closed, Funko issued a press release on Form 8-K with the SEC announcing its preliminary financial results for the fourth quarter of 2019.[1]   In this release, Funko stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018."   Funko further disclosed a $16.8 million write-down to "dispose of slower moving inventory to increase operational capacity."

4.      On this news, Funko's share price fell $6.20 per share in one day, or approximately 40%, to close at $9.29 per share on February 6, 2020.

5.      Next, on March 5, 2020, after the markets closed, Funko issued a press release on Form 8-K with the SEC announcing its financial results for the fourth quarter and full year of 2019.   In this release, Funko confirmed that net sales for the fourth quarter of 2019 had decreased 8% year-over-year to $213.6 million due to, among other things, "softness at retail during the holiday season which led to a decrease in orders."[2]   The Company further confirmed the $16.8 million write-down.

6.      On this news, the Company's stock price fell another $0.32, or over 4%, to close at $6.92 per share on March 6, 2020.

---

[1] https://www.sec.gov/Archives/edgar/data/1704711/000119312520025378/d881587dex991.htm.
[2] https://www.sec.gov/Archives/edgar/data/1704711/000170471120000020/ex-991.htm

7.      During the Class Period, the Company's stock traded as high as $27.89 per share. The March 6, 2020 closing price of $6.92 per share therefore ***represents approximately a 75% decrease from the Class Period high***.

8.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) Funko was experiencing lower than expected sales; (2) consequently, Funko was reasonably likely to incur a write-down for slower moving inventory; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

3

13. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

14. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15. Plaintiff Blagovest Y. Dachev acquired shares of Funko common stock at artificially inflated prices as set forth in his attached certification, and has been damaged.

16. Defendant Funko, Inc. is a Delaware Corporation with its principal place of business at 2802 Wetmore Avenue, Everett, WA 98201. Its common stock trades on the Nasdaq stock exchange under the symbol FNKO.

17. Defendant Brian Mariotti is the Chief Executive Officer of Funko, and has served in that capacity at all relevant times.

18. Defendant Russell Nickel was the Chief Financial Officer of Funko from October 2013 to August 13, 2019, and continued to work for the Company through December 31, 2019 as a Special Advisor.

19. Defendant Jennifer Fall Jung is and has been the Chief Financial Officer of Funko since August 13, 2019.

20. Defendants Mariotti, Nickel, and Jung (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and the investing public, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases

alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material, non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are therefore liable for the misstatements and omissions plead herein.

## MATERIALLY FALSE MISSTATEMENTS AND OMISSIONS

21.     On August 8, 2019, Funko announced its second quarter 2019 financial results, via press release filed on Form 8-K with the SEC.[3]  In this press release, Funko stated, in relevant part:

**Second Quarter 2019 Highlights**

- Net sales increased 38% to $191.2 million
- Gross profit[] increased 35% to $71.2 million
- Gross margin[] decreased 90 basis points to 37.2%
- Income from operations increased 98% to $17.1 million
- Net income increased to $11.4 million from $0.3 million
- Earnings per diluted share increased to $0.16
- Adjusted Net Income[] was $12.9 million compared to $3.2 million in the second quarter of 2018, and Adjusted Earnings per Diluted Share[] was $0.25, compared to $0.06 in the second quarter of 2018
- Adjusted EBITDA[] increased 61% to $31.4 million

*      *      *

**2019 Outlook**

The Company is raising its outlook for the full year 2019. The Company now expects net sales to be in a range of $840 million to $850 million. Adjusted EBITDA[3] is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share[3] is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019.

---

[3] https://www.sec.gov/Archives/edgar/data/1704711/000156459019030800/fnko-ex991_6.htm.

22.     Funko further stated in this press release that "[o]ur strong results in the first half of 2019 have allowed us to increase our guidance for the full year.   More importantly, the growing range of opportunities for revenue growth, international expansion and entry into new categories make us confident that our best days lie ahead, and that our fans, partners, employees and shareholders can look forward to the future."

23.     Also on August 8, 2019, Funko filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2019, affirming these financial results.   Concerning inventory levels, Funko stated:

> **_Our success depends, in part, on our ability to successfully manage our inventories._**
>
> We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.
>
> We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-in-time" basis. This requires us to more closely anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not

successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

24.    Pursuant to the Sarbanes-Oxley Act of 2002, Defendants Mariotti and Nickel certified that this Form 10-Q "fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.    On October 31, 2019, Funko announced its third quarter 2019 financial results and reiterated its fiscal 2019 outlook.  In a press release filed on Form 8-K with the SEC,[4] the Company stated, in relevant part:

**Third Quarter 2019 Highlights**

- Net sales increased 26% to $223.3 million
- Gross profit[] increased 26% to $85.5 million
- Gross margin[] decreased 10 basis points to 38.3%
- Income from operations increased 36% to $22.6 million
- Net income increased to $15.5 million from $7.6 million
- Earnings per diluted share increased to $0.25
- Adjusted Net Income[] was $19.9 million compared to $13.6 million in the third quarter of 2018, and Adjusted Earnings per Diluted Share[] was $0.38, compared to $0.27 in the third quarter of 2018
- Adjusted EBITDA[] increased 20% to $40.6 million

*       *       *

**2019 Outlook**

The Company is reiterating its outlook for the full year 2019. The Company expects net sales to be in a range of $840 million to $850 million. Adjusted EBITDA[] is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share[] is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019.

26.    Also on October 31, 2019, Funko filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2019,[5] affirming these financial results.  Concerning inventory levels, Funko stated, in relevant part:

---

[4] https://www.sec.gov/Archives/edgar/data/1704711/000156459019039150/fnko-ex991_6.htm.
[5] https://www.sec.gov/Archives/edgar/data/1704711/000156459019039165/fnko-10q_20190930.htm.

*Our success depends, in part, on our ability to successfully manage our inventories.*

We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-intime" basis. This requires us to more closely anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

27.     Pursuant to the Sarbanes-Oxley Act of 2002, Defendants Mariotti and Jung certified that this Form 10-Q "fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     The statements in ¶¶ 21-27 were materially false and misleading and omitted to disclose material information. Specifically, Defendants failed to disclose to investors that: (1) Funko was experiencing lower than expected sales; (2) consequently, Funko was reasonably likely to incur a write-down for slower moving inventory; and (3) as a result of the foregoing,

Defendants' statements and disclosures were materially misleading, failed to disclose material information, and/or lacked a reasonable basis.

## THE TRUTH EMERGES

29.     On February 5, 2020, after the markets closed, Funko issued a press release on Form 8-K with the SEC announcing its preliminary financial results for the fourth quarter of 2019.   In this release, Funko stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018."   Funko further disclosed a $16.8 million write-down to "dispose of slower moving inventory to increase operational capacity."   In this press release, Funko stated, in relevant part:

> Net sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018. Net sales were below expectations in mature markets, including the U.S., due to the challenging retail environment, which resulted in lower than expected purchases among Funko's top customers throughout the holiday season as well as softness in sales related to certain tentpole movie releases. These factors more than offset strong growth both in Europe and the Loungefly brand during the quarter.
>
> For the fourth quarter of fiscal 2019, Funko estimates:
>
> - Net sales in the U.S. will decrease approximately 9%, while net sales internationally will decrease approximately 8%, reflecting declines in mature international markets, including Australia and Canada, partially offset by continued double digit growth in Europe.
>
> - On a product category basis, net sales of figures will decrease approximately 10% and net sales of other products will decrease approximately 3% versus the year ago period, respectively. Net sales of Loungefly items, included in other products, are expected to show continued double digit growth in the fourth quarter offset by declines in other branded products.
>
> - The Company will incur a one-time $16.8 million charge related to the write-down of inventory as a result of the Company's decision to dispose of slower moving inventory to increase operational capacity. This charge is incremental to normal course reserves and will have an unfavorable impact to gross profit[], gross margin[], net loss and net loss per diluted share in the fourth quarter.
>
> - Gross profit[] will be in the range of $62.3 million to $62.8 million, while gross margin will be 29.2% to 29.4%. Gross margin excluding the one-time inventory write-down[] will be 37.0% to 37.3%.

- The Company will have a net loss in the range of $6.7 million to $6.0 million and net loss per diluted share of $0.12 to $0.11.

- Adjusted EBITDA[] will be in the range of $24.7 million to $25.7 million.

- Adjusted Net Income[] will be in the range of $8.1 million to $8.9 million and Adjusted Earnings per Diluted Share[] will be in the range of $0.16 to $0.18.

"While we are disappointed in our fourth quarter results, we are confident that our strong track record of innovation through new product categories and properties, as well as continued international expansion, will continue to propel the Company in 2020 and beyond. The underlying strength of our Pop! and Loungefly brands, combined with Funko's unique ability to leverage evergreen properties will enable the Company to achieve high-single-digit to low-double-digit sales growth in 2020," stated Brian Mariotti, Chief Executive Officer.

30.   The Company further announced that it expected that sales trends would not improve until second half of fiscal 2020, stating in the same press release:

The Company expects its 2020 net sales growth rate to be in the high-single-digits to low-double-digits. Additionally, the Company anticipates that top line trends will improve gradually throughout 2020 and will be largely weighted toward the second half of the year, with net sales in the first half expected to be down low-single-digits to flat compared to the first half of 2019. Funko plans to provide expanded guidance for 2020 in connection with the release of fourth quarter and full year 2019 financial results on March 5, 2020.

31.   On this news, Funko's share price fell $6.20 per share in one day, or approximately 40%, to close at $9.29 per share on February 6, 2020.

32.   Next, on March 5, 2020, after the markets closed, Funko issued a press release on Form 8-K with the SEC announcing its financial results for the fourth quarter and full year of 2019.  In this release, Funko confirmed that net sales for the fourth quarter of 2019 had decreased 8% year-over-year to $213.6 million due to, inter alia, "softness at retail during the holiday season which led to a decrease in orders."  The Company further confirmed the $16.8 million write-down.

33.     Furthermore, the Company announced that its net sales for full year 2019 were just $795.1 million, falling far short of the increased guidance of $840 to $850 million announced on August 8, 2019 and reiterated on October 31, 2019.

34.     On this news, the Company's stock price fell another $0.32, or over 4%, to close at $6.92 per share on March 6, 2020.

35.     From its Class Period peak of $27.89 to its closing price of $6.92 on March 6, 2020, Funko's stock price plummeted by approximately 75%.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Funko common stock between August 8, 2019 to March 5, 2020, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

37.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

38.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

     a.   Whether the Exchange Act was violated by Defendants;

     b.   Whether Defendants omitted and/or misrepresented material facts;

     c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.  Whether the price of the Company's stock was artificially inflated; and

f.  The extent of damage sustained by Class members and the appropriate measure of damages.

39.  Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

40.  Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

41.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

42.  Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a.  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.  The omissions and misrepresentations were material;

c.  The Company's common stock traded in efficient markets;

d.  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts

43.  At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC;

and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

### NO SAFE HARBOR

44.    The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

45.    To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

### SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Funko, their control over, and/or receipt and/or modification of Funko's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Funko, participated in the fraudulent scheme alleged herein.

**LOSS CAUSATION**

47.     On February 5, 2020, Funko announced its preliminary financial results for the fourth quarter of 2019, expecting net sales of approximately $214 million and announcing a write-down of $16.8 million.  On this news, Funko's share price fell $6.20 per share in one day, or approximately 40%, to close at $9.29 per share on February 6, 2020.

48.     On March 5, 2020, Funko announced its financial results for the fourth quarter and full year of 2019, confirming that net sales for the fourth quarter of 2019 had decreased 8% year-over-year to $213.6 million and confirming the $16.8 million write-down.  On this news, the Company's stock price fell another $0.32, or over 4%, to close at $6.92 per share on March 6, 2020.

49.     During the Class Period, the Company's stock traded as high as $27.89 per share. The March 6, 2020 closing price of $6.92 per share therefore ***represents approximately a 75% decrease from the Class Period high***.

50.     The February 5, 2020 and March 5, 2020 disclosures contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent declines in the Company's share price.

**CAUSES OF ACTION**

**<u>COUNT ONE</u>**
**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose the material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

53.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

54.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT TWO
### Violations of § 20(a) of the Exchange Act
### (Against the Individual Defendants)

55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above which contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

b) awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post- judgment interest thereon.

c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: April 9, 2020                          Respectfully submitted,

                                              By: */s/ Jason M. Leviton*
                                              Jason M. Leviton
                                              **BLOCK & LEVITON LLP**
                                              260 Franklin St., Suite 1860
                                              Boston, MA 02110
                                              Tel.: (617) 389-5600
                                              Fax: (617) 507-6020
                                              jason@blockesq.com

                                              *Counsel for Plaintiff*